(December 28, 1899.)

# REYNOLDS v. BOARD OF COMMISSIONERS OF ONEIDA COUNTY.

[59 Pac. 730.]

CONSTITUTIONAL LAW—DELEGATION OF POWER.—A power or function vested in one department body, board, or tribunal by express constitutional provision, cannot be delegated by such department, body, board or tribunal to another department, body, board or tribunal.

SAME—FIXING SALARIES OF COUNTY OFFICERS.—Act of March 2, 1899, provides a uniform basis, reasonable compensation, throughout the state, for the fixing of salaries of county officers; is general in its operation; does not delegate legislative functions, does not contravene the constitution, and is a valid act. *Stookey v. Board of County Commrs.*, ante, p. 542, 57 Pac. 312, affirmed.

APPEALS FROM ACTION OF COMMISSIONERS.—The action of the board of commissioners in fixing salaries of county officers, under act of March 7, 1899, is not final, but subject to appeal.

SAME—FINDINGS OF FACT.—Upon trial of appeal from order of a board of county commissioners, findings of fact should be made, unless waived as provided in section 4405 of the Revised Statutes.

JUDICIAL DISCRETION.—When a board of county commissioners, in exercising a discretionary power, make an order, such order will not be disturbed on appeal, except in case of clear abuse of such discretion.

(Syllabus by the court.)

APPEAL from District Court, Oneida County.

D. W. Standrod and J. W. Eden, for Appellants.

It is true that our supreme court has suggested in the case of *Stockey v. Board of County Commrs.*, ante, p. 542, 57 Pac. 312, that an appeal would lie from these orders, the same as in other cases. The question of an appeal from an order of this character was not before the supreme court in that case, however, and we beg leave to submit that an appeal was not contemplated by the statute known as the "county salary bill," and that appeals from orders of this character have never been allowed by the courts, even under a statute so broad as the provisions of our Revised Statutes, section 1776, providing for appeals by "any person aggrieved." The power conferred upon the board of

commissioners by the salary bill is in the nature of legislative
—not in a literal sense legislative, but in the broader sense—
and when the board under this statute fixes the salaries, it acts
as a legislative body thus far and does not act judicially. The
distinction between a judicial and legislative act is well de-
fined. The one determines what the law is and what the rights
of parties are, with reference to transactions already had; the
other prescribes what the law shall be in future cases arising
under it. (Throop on Public Officers, sec. 532; *Mabry v. Baxter*,
11 Heisk. (Tenn.) 682.) The action of the commissioners in
fixing the salaries was essentially the exercise of a legislative
power, because they established by their order what the law
should be in the future, and not what any officer was entitled
to for services already rendered. (Cooley's Constitutional Limi-
tations, 113; *Nebraska Tel. Co. v. State*, 55 Neb. 627; *Stockey
v. Board of County Commrs.*, ante, p. 542, 57 Pac. 312; *Smith
v. Strother*, 68 Cal. 194, 8 Pac. 852.) The power to fix the
salaries, being a legislative function, cannot be given by the legis-
lature to the judiciary. (*Norwalk St. Ry. Co.'s Appeal*, 69
Conn. 576, 37 Atl. 1080, 38 Atl. 708, 39 L. R. A. 794; *Shepherd
v. City of Wheeling*, 30 W. Va. 479, 4 S. E. 635.) An appel-
lant, to obtain a reversal in cases which involve the exercise of
discretion must show the denial of a legal right. (2 Ency. of
Pl. & Pr. 410; *Howell v. Mills*, 53 N. Y. 322.)

George E. Gray and Dietrich, Chalmers & Stevens, for Re-
spondents.

"Sec. 1776. An appeal may be taken from any order, deci-
sion or action of the board while acting in an official capacity,
by any person aggrieved thereby, or by any taxpayer of the
county when any demand is allowed against the county, or when
he deems any order, decision or action of the board illegal or
prejudicial to public interests." (*Stookey v. Board of County
Commrs*, ante, p. 542, 57 Pac. 312.) But counsel say the ex-
pression of the court in *Stookey v. Board etc.* was unneccessary,
and is mere *obiter*. In one sense possibly it was not necessary, but
in no real sense is it *obiter*. Essentially it is a vital part of the
decision. The court had under consideration the constitutional-

ity of the act.   The inference from a careful reading of the de-
cision is irresistible that the court reached the decision that the
act was not violative of the spirit of the constitution, upon the
theory and condition, and not otherwise, that the power con-
ferred upon the board was not absolute, unreasonable and
despotic, but a discretionary power, to be exercised in good faith
and in reason, and subject to review by the courts and to such
theory and condition the court concluded it best to give definite
expression,

QUARLES, J.—At the general election in 1898, D. J.
Reynolds was elected to the office of clerk of the district court,
and ex-officio auditor and recorder, in and for Oneida county;
P. C. Bingham was elected to the office of sheriff of said county;
J. E. Dalley was elected to the office of superintendent of public
schools of said county; and Alice Thews was elected to the office
of treasurer of said county.   At the April meeting, 1899, of the
board of county commissioners in and for said county, said
board made an order, under the provisions of the act of March
7, 1899 (Sess. Acts 1899, pp. 405-407), fixing the salaries of
the different county officers in and for said county.   The salaries
of the officers in question were fixed by said order as follows, to
wit: Clerk of the district court and *ex-officio* auditor and
recorder, at the sum of $900 per annum; sheriff, at $900 per
annum; superintendent of schools, at $500 per annum; and
treasurer, at $500 per annum,—for 1898 and 1899.   From said
order four several appeals were taken by the officers above named,
respectively, to the district court, and by stipulation it was
agreed at the commencement of the hearing in the district court
that said four appeals "might be tried together, and that the
judgment entered by the court might modify or affirm the order
of the board of commissioners appealed from so as to cover the
amount of salary to be allowed the respective officers involved in
said appeal, as though each appeal had been heard separately,
and a separate judgment entered in each thereof."   The dis-
trict court rendered judgment that the said order of the board
of county commissioners be modified as follows, to wit: "The de-
cision of the court is that the order of the board of county com-
missioners hereto appealed from is remanded to said board with

instructions that they modify said order by striking out from the salary of county treasurer the figures '$500,' and insert in lieu thereof the figures '$700'; strike out from the salary of sheriff the figures '$900,' and insert in lieu thereof the figures '$1,400'; strike out from the salary of the clerk of the district court the figures '$900,' and insert in lieu thereof the figures '$1,500'; strike out in the salary of the superintendent of schools the figures '$500', and insert in lieu thereof the figures '$800.' Each party to this action to pay his own costs." From said judgment of the district court the appellants, the board of county commissioners, appeal to this court.

The appellants contend that the judgment should be reversed on four different grounds, viz.: 1. Because the court erred in overruling the objection of the appellants to the introduction of any evidence; 2. Because there are no findings of fact that support the judgment; 3. That the power to fix the salaries in question is a legislative function, and therefore not reviewable by the courts; 4. That in making the orders appealed from the board of commissioners were exercising a discretionary power, and violated no law, and therefore the said orders could not be reviewed upon appeal. We will discuss the different questions involved without reference to the order in which they are stated.

It is a well-settled rule that a power or function vested solely in one department, body, board or tribunal by express constitutional provision cannot be delegated by such department, body, board or tribunal to another department, body, board or tribunal. The legislature cannot delegate the functions expressly vested in it by the constitution to boards of county commissioners or to the judiciary. If, as contended by appellants, the act in question, popularly known as the "Salary Bill," delegates to the board of county commissioners in the various counties a legislative power in the matter of fixing the salaries of county officers, then the said act should be held unconstitutional and void. But we do not so consider the act. It does not vest or attempt to vest in the board of commissioners the power to make law. The act in question is of general and uniform operation throughout the state. It fixes the basis upon which the salary of county officers in each county in the

state is to be fixed.    That basis is the same in each, and is rea-
sonable compensation for the services to be performed, taking
into consideration the character of the services, amount of labor
to be performed, and such surrounding circumstances as affect
the cost of living and supporting one's self at the county seat of
his county compatible with the dignity of the office to which
he has been elected.    We do not think that the legislature in-
tended that any of the officers whose interests are involved should
receive such remuneration as is paid to a common laborer, but
that their compensation should be reasonable, taking into con-
sideration all of the circumstances.    The duty which devolves
upon the county commissioners under the act in question is a
delicate, and will generally be found to be a difficult, one.    They
are called upon to exercise a judicial discretion, and to act so
as to carry out the intent of the statute, with due regard for the
rights and interests of both office-holder and taxpayer.    Their
action involves judicial discretion.    They act, not as a legislative
body, but *quasi* judicially.    More or less trouble will grow out
of their actions under said statute.    They have conflicting inter-
ests to consider and determine.    On the one hand, office-holders
will desire large salaries, while the taxpayers will desire the sal-
aries fixed as low as possible.    But the interests of all—both
office-holder and taxpayer—demand that salaries should be fixed
at such sums as will reasonably compensate each officer for his
time and labor, taking into consideration the qualifications nec-
essary to be possessed by each county officer, and the responsi-
bilities of his office.    All of these matters should be carefully in-
vestigated and determined by the board of commissioners.    The
board should exercise the discretion vested in it with due regard
for the rights of all parties concerned.    It was not intended by
the legislature that the action of the board of commissioners
should be final, or that such board might act arbitrarily, through
mere whim or caprice.    Section 1776 of the Revised Statutes,
as amended by act of February 14, 1899 (Acts 1899, p. 248),
provides that "an appeal may be taken from any act, order or
proceeding of the board, by any person aggrieved thereby, or by
any taxpayer of the county when any demand is allowed against
the county or when he deems any such act, order or proceeding

illegal or prejudicial to public interests." And there is nothing in the salary bill (the act under consideration) which excepts it from this general rule. Hence we are compelled to hold that it was the intention of the legislature in passing the act in question that appeals should lie from orders made by the board fixing salaries of county officers. In entertaining such appeals, the courts are not exercising legislative functions. It was proper for the court to hear evidence, and necessary for it to do so.

There are no formal findings in the record, such as are contemplated by section 4405 of the Revised Statutes. We find an expression of the opinion of the trial judge in the record, which is designated "Decision, findings, and conclusions," and which ends with the order hereinbefore quoted, as follows:

"This case is an appeal from the order of the board of county commissioners fixing the salaries of certain county officers. The point involved in the appeal is whether the board of county commissioners abused the discretion invested in them by the legislature in fixing the salaries of said county officers. The reason for the legislature delegating this power and discretion to the board of county commissioners was the fact that the different counties of the state, as to matters of territory, population, and expense of running the same, are so widely different that no general legislation could cover the subject in a way that would be right and just to all the counties, and for the best interests of the general public. The business of the counties must be carried on by the officials selected by the people, and the policy of the law is that such compensation should be paid them as will insure the efficient, business-like, and economical administration of the affairs of their respective offices in a manner provided by law. The law requires that the county officers shall keep their offices open daily between certain hours, and that certain ones shall have their residence at the county seat. The law contemplates that the time and services of the county officials shall belong exclusively to the public within official hours. Hence they are effectually cut off from other avocations. It is not the policy of the law, the wish of the people, or in the interest of public economy that the compensation of county officials should be placed on a niggardly footing, totally inadequate to the decent

administration of public affairs.  Neither is it the policy that
these officials should be allowed extravagant salaries, beyond all
reason.  But the intention of the legislature was that the boards
of county commissioners in the various counties should take into
consideration the work and time consumed in the various offices,
the expense connected with the same, the self-sustaining revenue
therefrom, the responsibilities attached thereto, the bonds under
which the parties are placed, and all the circumstances and con-
ditions connected therewith, and from all these determine what
would be a proper and just compensation for their services.  The
question is not what men could be hired for to perform these
services, for men cannot be hired to fill these offices.  They are
elected by the people; are representative men, in whom the peo-
ple have confidence, and whom the people have said should ad-
minister their public affairs during the ensuing two years.  The
question to be determined is what amount of annual salary shall
be paid them for decently, respectably, and officially represent-
ing the welfare of the county, so that they may not only live
and breathe out an existence, but also that they may derive from
their positions a fair and reasonable profit, the same as ordinary
mortals have a right to expect in other affairs of life.  The pub-
lic expect these officials to give their time and best energies to
their public duties, and the people, in return, expect they shall
have due and proper compensation therefor.  Stop all extrava-
gances in county matters; let honesty, fidelity, and capability be
the paramount considerations; pay your county officials living
salaries, commensurate with their duties and responsibilities—
and the people will say 'Amen' to this kind of a programme, for
it is right, and the true policy of the law.

"After due consideration of the evidence introduced in this
case, both by appellants and respondents, the court has arrived
at the following findings of fact and conclusions of law in the
appeal herein submitted: 1. That the county commissioners
fixed the salaries of the appellants herein on the eleventh day of
April, A. D. 1899, respectively, as follows: Treasurer, $500;
sheriff, $900; clerk of district court, $900; superintendent of
schools, $500.  The order does not state if these salaries were
annual, but the court infers such was the intention.  2. The

board of county commissioners did not take into consideration, as they should, the income derived from the offices for the county, the time consumed, and nature of the labors and responsibilities attached thereto, but based their action on a rigid zeal for economy to the taxpayers, that did injustice to the appellants, and a policy that would result, if persisted in, in placing the affairs of the county in incompetent hands, and result in the officials shirking their duties. The commissioners did not use their discretion in this matter as wisely and prudently as they should."

This paper might be regarded as findings of fact and conclusions of law, but, as contended by appellants, they are not sufficient. We think the trial judge evinced a correct and comprehensive view of the object of the statute under consideration. The true question to be determined on the appeal is, Did the board of commissioners abuse the discretion vested in it in making the order in question? To determine this question, it was necessary to hear evidence bearing upon the numerous points to be considered. And findings, when not waived as provided by section 4405 of the Revised Statutes, *supra,* should be made, showing the facts upon which the abuse of discretion is predicated. The action of the board should not be disturbed unless there is a clear abuse of discretion shown, which cannot be shown merely by the opinion of the district court.

Appellants argue that no law was violated by the board, and that the respondents had no legal rights to be violated at the time the salaries were fixed; that whatever legal right they have to compensation was created by the order appealed from. We do not agree with this contention. The act in question vests in each county officer in the state the right to compensation which is, within the maximum and minimum prescribed, reasonable, considering the circumstances surrounding and affecting each office. Each taxpayer and office-holder has the right to have the board of commissioners in his county exercise its discretion in the matter of fixing such salaries as will afford to each officer reasonable compensation, thus protecting public interests. Each taxpayer also has a legal right to have the county treasury protected against an abuse of the discretion vested in the board, by way of profligate extravagance. If the theory of the appellants be

·correct, that the action of the board is final and cannot be reviewed by the courts, the taxpayers in one of the smaller counties may see the salaries fixed at the maximum, without regard to the amount of labor to be performed, or other circumstances, contrary to public interests, and be powerless to remedy the wrong. No such thing was contemplated. The theory upon which the case of *Stookey v. Board of County Commrs.,* ante, p. 542, 57 Pac. 312—which is hereby affirmed—was decided, is that the boards of commissioners must, within the discretion vested in them, allow reasonable compensation by way of annual salaries, when acting under the provisions of the act in question. It was only upon the theory that we could hold said act to be general and not special legislation. Under this theory, the act is uniform in its operation throughout the state. Under any other theory, we would be compelled to hold it local and special, and inhibited by the constitution. While it seems that the board of commissioners fixed the salaries in question very low, and while the amounts fixed by the district court do not seem extravagant, yet it does not sufficiently appear from the record before us that the board of commissioners abused its discretion in making the order appealed from. The cause is remanded to the district court for further proceedings consistent with the views herein expressed; each party to pay its own costs upon this appeal.

Huston, C. J., and Sullivan, J., concur.